**E-FILED on** __10/30/06__

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, EX REL. BILL LOCKYER, Attorney General of the State of California,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SANTA CRUZ; GAIL PELLERIN in her Official Capacity as County Clerk and Registrar of Voters of the County of Santa Cruz, and DOES 1 through 10,<br><br>Defendants. | No. C-05-04708 RMW<br><br>ORDER ON DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION, DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION<br><br>**[Re Docket Nos. 53, 56, 68, 69, 75, 76]** |

Defendants County of Santa Cruz and Gail Pellerin move for summary adjudication on a discrete legal issue. Plaintiff Bill Lockyer, in his capacity as Attorney General of California, moves for a preliminary injunction against both defendants. For the reasons set forth below, the court the grants defendants' motion for summary adjudication in part and denies plaintiff's motion for a preliminary injunction.

## I. BACKGROUND

California Attorney General Bill Lockyer, on behalf of all Californians, instituted this action against the County of Santa Cruz and its County Clerk, Gail Pellerin, in the California Superior Court. Lockyer sought (1) a writ of mandate under California Code of Civil Procedure § 1085

requiring the defendants to comply with California Elections Code § 12280 and the California Secretary of State's guidelines for accessibility by individuals with physical disabilities and (2) injunctive relief preventing defendants from violating portions of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12134, and regulations promulgated thereunder, the ADA Accessibility Guidelines ("ADAAG"),[1] 28 C.F.R. pt. 36, app. A.

The defendants removed the action to this court and moved to dismiss both causes of action; Lockyer moved to remand his first cause of action to state court. The court denied the motion to dismiss and, finding that the California Elections Code § 12280 cause of action raised novel issues of state law and constituted an exceptional circumstance, granted Lockyer's motion for partial remand. *People ex rel. Lockyer v. County of Santa Cruz*, 416 F. Supp. 2d 797 (N.D. Cal. Feb. 21, 2006). Proceedings before this court are now limited to Lockyer's ADA cause of action.

At the April 14, 2006 case management conference, the parties agreed that resolution of a

---

[1] The ADAAG is actually a 1991 publication of the Architectural and Transportation Barriers Compliance Board (an independent federal agency now known simply as the U.S. Access Board). *See* 56 FR 35408-01; http://www.access-board.gov/about/history.htm. The DOJ adopted those guidelines wholesale and incorporated them into the Code of Federal Regulations with the heading "Standards for Accessible Design." 28 C.F.R. pt. 36, app. A. The DOJ frequently refers to these guidelines as the "ADA Standards". As another court explained:

> It is the "Standards," which are codified at 28 CFR Part 36, App. A, that constitute the legally binding regulation. Nevertheless, the term ADAAG continues to be widely used within the industry. That is not a problem so long as the two are identical, but could be confusing if a discrepancy develops between the ADAAGs and the Standards, *e.g.*, if the Architectural and Transportation Barriers Compliance Board ("Access Board") enacts additional ADAAGs that DOJ declines to endorse, or if DOJ unilaterally amends the Standards.

*Indep. Living Res. v. Or. Arena Corp.*, 1 F. Supp. 2d 1124, 1130 n.2 (D. Or. 1998). Some differences do exist; the ADA Standards state "The technical specifications 4.2 through 4.35, of these guidelines are the same as those of the American National Standard Institute's document A117.1-1980, except as noted in this text by italics. However, sections 4.1.1 through 4.1.7 and sections 5 through 10 are different from ANSI A117.1 in their entirety and are printed in standard type." 28 C.F.R. pt. 36, app. A § 1. The content of the ADAAG and the ADA Standards does not differ in any way material to these motions, and for simplicity, the court will, as have the parties, use "ADAAG" to refer to both the ADA Standards and the ADAAG without distinction.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION, DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION—No. C-05-04708 RMW
JAH                                              2

discrete legal issue would aid resolution of this action.[2]  The court instructed them to brief the following issue:

> Can the County be in violation of the ADA solely because its voting program contains polling places that do not comply with the standards set forth in the ADAAG, if those polling places are housed in buildings that were constructed or last substantially remodeled prior to January 1992 and that were not constructed by, for, or on behalf of the County?

The defendants have moved for summary adjudication of the above issue.  Lockyer also moves for a preliminary injunction requiring defendants to (1) make a good-faith effort to comply with the ADAAG and the *ADA Checklist for Polling Places* when conducting the November 7, 2006 election, (2) inform voters which polling sites are likely to be inaccessible, and (3) pay for independent monitoring of the November 7, 2006 election in Santa Cruz County to determine compliance with the ADA.  There is substantial overlap of the legal issues in this pair of motions.

## II.  ANALYSIS

Title II of the ADA, 42 U.S.C. §§ 12131-12165, covers public services.  Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  § 12132.  "This provision guards against both intentional discrimination and simple exclusion from services resulting not from intentional discriminatory acts, but rather from inaction, thoughtlessness, or equal treatment when particular accommodations are necessary."  *Presta v. Peninsula Corridor Joint Powers Bd.*, 16 F. Supp. 2d 1134, 1136 (N.D. Cal. 1998).  "The ADA applies to all programs, services, and activities of state and local governments, including elections."  *Am. Ass'n of People with Disabilities v. Shelley* ("*AAPD*"), 324 F. Supp. 2d 1120, 1125 (C.D. Cal. 2004).  "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the

---

[2]  The parties could not agree on a proposed order for that case management conference and no case management order was issued by the court.  Many of the issues covered at that case management conference appear to have been effectively dealt with.  The parties shall appear for a further case management conference on December 15, 2006 at 10:30 a.m. and shall file a joint case management statement by December 11, 2006.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION, DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION—No. C-05-04708 RMW
JAH                                                                 3

1  provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of
2  services or the participation in programs or activities provided by a public entity." § 12131(2).  "To
3  prove a public program or service violates Title II of the ADA, a plaintiff must show: (1) he is a
4  qualified individual with a disability; (2) he was either excluded from participation in or denied the
5  benefits of a public entity's services, programs or activities, or was otherwise discriminated against
6  by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of
7  his disability."  *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir.
8  1997).

### A. Defendants' motion for summary adjudication

Congress directed the U.S. Attorney General to promulgate regulations implementing portions of Title II that did not deal with transportation.  *See* § 12134(a).  The U.S. Attorney General's regulations are therefore entitled to deference under the standard of *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837 (1984).  *See Zimmerman v. Or. Dept. of Justice*, 170 F.3d 1169 (9th Cir. 1999).  Under Title II, public entities providing services must adhere to the following standard:

> (a) General.  A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities.  This paragraph does not—
>
> (1) Necessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities;
>
> (2) Require a public entity to take any action that would threaten or destroy the historic significance of an historic property; or
>
> (3) Require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens.
>
> (b) Methods—(1) General.  A public entity may comply with the requirements of this section through such means as redesign of equipment, reassignment of services to accessible buildings, assignment of aides to beneficiaries, home visits, delivery of services at alternate accessible sites, alteration of existing facilities and construction of new facilities, use of accessible rolling stock or other conveyances, or any other methods that result in making its services, programs, or activities readily accessible to and usable by individuals with disabilities.  A public entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance with this section.  A public entity, in making alterations to existing buildings, shall meet the accessibility requirements of § 35.151.  In choosing among available methods for meeting the requirements of this section, a public entity shall

>give priority to those methods that offer services, programs, and activities to qualified individuals with disabilities in the most integrated setting appropriate.

28 C.F.R. § 35.150(a), (b). Public entities are also required to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." § 35.130(d). "A public entity may not, in determining the site or location of a facility, make selections . . . [t]hat have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination." § 35.130(b)(4)(i). Buildings are addressed specifically by 28 C.F.R. § 35.151(a), which provides that "[e]ach facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, if the construction was commenced after January 26, 1992."

The parties disagree the extent to which the defendants must adhere to the ADAAG when conducting elections. The defendants claim that they are merely required to ensure that Santa Clara's election program is accessible to the disabled as a whole. Lockyer's argument appears to be that a single violation of the ADAAG at a polling location constitutes a violation of the ADA. The Ninth Circuit does not appear to have addressed this issue, and there is a dearth of other case law.

Lockyer presents two arguments as to why defendants are bound by the ADAAG. First, Lockyer argues that a publication by the U.S. Department of Justice ("DOJ"), *ADA Checklist for Polling Places* ("*Checklist*"),[3] should be afforded deference under *Chevron* and that defendants should be required to follow the publication. In places, the *Checklist* refers to portions of the ADAAG when discussing access requirements for polling places. *See*, *e.g.*, *Checklist* at 7. However, the publication is prefaced with a disclaimer that it "does not constitute a legal interpretation of the" ADA. *Checklist* at i. No deference should be given a document that the authoring federal agency has expressly stated should not be relied on as an authoritative interpretation of the law. The incorporation of parts of the ADAAG into the *Checklist* therefore

---

[3] The *Checklist* is available from the DOJ's website at http://www.usdoj.gov/crt/ada/votingck.htm. Lockyer's request for judicial notice of this document is granted.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION, DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION—No. C-05-04708 RMW
JAH                                     5

does not make or indicate that the ADAAG is, of itself, binding on the defendants.[4]

Second, Lockyer also argues that in order to comply with 28 C.F.R. §§ 35.130, 35.150 the defendants must also comply with the *Checklist*. Lockyer, though, presents no authority for such a position. In any event, the *Checklist* does not support Lockyer's argument that the requirements of the ADAAG should be used to determine if the condition of individual polling places constitute violations of Title II. As noted on page 4 of the *Checklist*, "[t]here may also be some sites that cannot be made accessible so plans will be needed to offer accessible voting in some other way," implying that defendants are correct that all that is required of them under the ADA is programmatic compliance. The *Checklist* also states that "[w]hen State and local governments make permanent modifications or alterations to facilities that serve as polling places these alterations must comply with the ADA Standards." *Id*. This sentence would be superfluous if all polling places, regardless of ownership or last date of modification, had to comply with the ADAAG.

The *Checklist* is not of itself binding on the defendants; arguments that the defendants are violating the ADA by not complying with the *Checklist* are therefore misplaced.[5] As another court stated in another dispute involving the ADA's requirements for public elections:

> Title II requires only that programs be made "readily accessible to and usable by" people with disabilities. 28 C[.]F.R. § 35.150. . . . As provided in the controlling regulations, a public entity may employ such means as "assignment of aides to beneficiaries . . . or any other methods that result in making its services, programs, or activities readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(b)(1).
>
> It cannot be disputed that casting a vote independently and secretly would be preferred over casting a vote with the assistance of a family member or other aide. However, the ADA does not require accommodation that would enable disabled persons to vote in a manner that is comparable in every way with the voting rights

---

[4] Though neither party raises the issue, the court notes that 28 C.F.R. pt. 35 contains regulations designed to implement Title II and that 28 C.F.R. pt. 36 contains regulations designed to implement Title III. *See* 28 C.F.R. § 35.101; 28 C.F.R. § 36.101. ADAAG appears in the regulations as an appendix to 28 C.F.R. pt. 36. According to ADAAG, "[t]hese guidelines are to be applied during the design, construction, and alteration of such buildings and facilities to the extent required by regulations issued by Federal agencies, including the Department of Justice, under the Americans with Disabilities Act of 1990."

[5] At the hearing on his motion, Lockyer argued that the *Checklist* could be used as evidence of which portions of the ADAAG the DOJ thought were important to polling place access. This is a reasonable use of the *Checklist*.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION, DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION—No. C-05-04708 RMW
JAH                                       6

United States District Court
For the Northern District of California

enjoyed by persons without disabilities.  Rather, it mandates that voting programs be made accessible, giving a disabled person the opportunity to vote.

*AADP*, 324 F. Supp. 2d at 1126.

The defendants, however, have not framed this issue completely accurately.  The age of a building or who owns it is not directly relevant to whether the defendants have violated the ADA when conducting elections.  The reason is that buildings used as polling places are not typically constructed for that purpose.  If they were, 28 C.F.R. § 35.151(a) would apply, which requires buildings modified after January 1992 and used for public services to be "readily accessible to and usable by individuals with disabilities."

But the defendants have also not shown that they are held to any lesser a standard under § 35.130 and § 35.150 when voting is held in buildings the County does not own or buildings last modified before January 1992.  The defendants cannot purposefully select pre-1992 buildings for polling places to avoid the ADAAG; such would run afoul of 28 C.F.R. § 35.130(b)(4)(i)'s prohibition on making selections in a manner that has a discriminatory effect.  Generally, § 35.130(b)(4)(i) would seem to impose on defendants a duty to select the best available sites for polling.

Likewise, building age would appear to be irrelevant to compliance with § 35.150.  That regulation requires a jurisdiction's voting program "when viewed in its entirety" to be "readily accessible to and usable by individuals with disabilities" without any qualifications regarding the age of buildings.  Section 35.150 (unlike the relative standard of § 35.130) therefore provides a minimum threshold the defendants must satisfy when providing election services.

The court will grant the defendant's motion for summary adjudication in part on the narrow issue presented:  Even though some buildings which the defendants use for polling places do not fully conform to the requirement of the ADAAG, the defendants are not necessarily in violation of Title II and the regulations promulgated thereunder.[6]  However, the court will grant partial

---

[6] The court's ruling is certainly not that the defendants may ignore the requirements of the ADA and its associated regulations; it is merely that non-compliance with an ADAAG provision alone is not proof of a violation of Title II.  Lockyer has certainly presented evidence of numerous violations of ADAAG standards at Santa Cruz County polling places, but this evidence alone does not prove that

1  summary adjudication in part in favor of Lockyer:  The defendants' use of older buildings does not
2  relax the analysis under 28 C.F.R. § 35.150; selection of older, non-ADAAG-compliant buildings
3  may even violate 28 C.F.R. § 35.130(b)(4)(i) if better choices are available to the defendants.

**B.  Lockyer's motion for a preliminary injunction**

A district court has discretion to grant or deny a request for preliminary injunctive relief. *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1156 (9th Cir. 2006).  Under the traditional test for granting preliminary injunctive relief, the applicant must demonstrate: "(1) a likelihood of success on the merits; (2) a significant threat of irreparable injury; (3) that the balance of hardships favors the applicant; and (4) whether any public interest favors granting an injunction." *Raich v. Ashcroft*, 352 F.3d 1222, 1227 (9th Cir. 2003).  Alternatively, "[t]he moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in favor of the moving party." *Stuhlbarg Intern. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839-40 (9th Cir. 2001).  The two parts of this alternative test "represent extremes of a single continuum, rather than two separate tests." *Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003) (internal citation and quotation marks omitted).

Lockyer's arguments that he is likely to succeed are based on the erroneous assumption that violations of the *Checklist* and the ADAAG automatically constitute violations of 28 C.F.R. § 35.130 and 28 C.F.R. § 35.150.  The court is aware of the studies Lockyer has been conducting of Santa Cruz County polling sites since 2004 and the finding of numerous ADAAG violations. For example, using the ADAAG standards, of 114 Santa Cruz polling sites from the June 2006 election, seventeen lacked parking spaces of adequate size, thirty-five had parking spaces with too steep a slope, twenty-five had access problems from the sidewalk or street to the voting location, and nineteen had door thresholds that were too high.  This list of problems, however, does not prove that voting in Santa Cruz County "when viewed in its entirety, is [not] readily accessible to and usable by individuals with disabilities" or that polling locations selected "have the effect of

---

the defendants have violated Title II.  Lockyer, though, certainly has numerous pieces of evidence from which he can attempt to assemble into a case against the defendants.

1  excluding individuals with disabilities from, [or] denying them the benefits of" voting (or subjects
2  them to discrimination when doing so). *See* 28 C.F.R. § 35.150(a).

3  As a picture is worth a thousand words, in the interest of saving space, some representative
4  images from Lockyer's investigations are incorporated into this order. The first image shows the
5  Veterans of Foreign Wars Post 7263, where polling was conducted in March 2004, November
6  2004, November 2005, and June
7  2006. Adler Decl. ¶ 38, Ex. A(8)
8  at 1 ("64.jpg"). The ramp
9  pictured leads from the parking
10 lot to the front door, and
11 according to Lockyer's
12 investigators, has a slope of up to
13 9.2%. *Id.*, Ex. A(4) at 25. The
14 maximum allowed under the
15 ADAAG for post-1992
16 construction is 8.3%.[7] ADAAG
17 § 4.8.2. The ramp also lacks edge
18 protection of the sort described in
19 ADAAG § 4.8.7. Adler Decl.,
20 Ex. A(4) at 24. The second
21 picture shows a walkway leading
22 from the parking lot to the polling
23 location at Crown College. *Id.*,
24 Ex. A(4) at 23, A(7) at 4
25 ("51A.jpg"). There is a grating in
26 the middle of the sidewalk, and




27
28 [7] All ADAAG sections referred to in this paragraph apply to buildings constructed or modified after January 1992, but for brevity, the court will not reiterate that point.

United States District Court
For the Northern District of California

1 the spaces between the bars are
2 three-fourths of an inch across.
3 *Id*. The maximum allowed under
4 the ADAAG is one-half inch.
5 ADAAG § 4.5.4. The last picture
6 shows a ramp leading from the
7 parking lot to the sidewalk at
8 Scotts Valley High School. Adler
9 Decl., Ex. A(4) at 25, A(8) at 1
10 ("67.jpg"). The slope of the



11 flared sides is 54% on the left and 67% on the right. *Id*. ¶ 29(b)(iii), Ex. A(4) at 25. ADAAG
12 § 4.7.5 allows a maximum slope of 10% for flared sides. The slope of the access portion of this
13 ramp also has a slope of up to 10.3%. Adler Decl. ¶ 29(b)(ii), Ex. A(4) at 24. This evidence
14 clearly shows trees of individual ADAAG violations, but it is far from clear whether this
15 collection as a whole forms the forest of a Title II violation. Lockyer has not demonstrated that it
16 is probable he will succeed on the merits of this action.

17     Lockyer argues that the defendants have been on notice since 2004 of his investigation, and
18 that therefore the defendants cannot complain about the burden of the injunction he seeks.
19 However, as defendants point out, Lockyer has not after his extensive investigation brought to the
20 attention of the court facts indicating that any person with a qualified disability in Santa Cruz
21 County has been prevented from, or even hindered while, voting.[8] While the loss of voting rights
22 "constitutes irreparable injury," *see Cardona v. Oakland Unified School Dist*., 785 F. Supp. 837,
23 840 (N.D. Cal. 1992), the evidence before the court does not show a high likelihood of irreparable
24 injury. Lockyer's motion for a preliminary injunction is denied.

25

26 [8] The defendants' factual showing presented in opposition to Lockyer's motion plays little part in this decision. However, the court sustains Lockyer's objections under *United States v. Scholl*, 166
27 F.3d 964, 973-74 (9th Cir. 1999), to the legal conclusions contained in the declaration of HolLynn D'Lil. The court also sustains Lockyer's objections under Fed.R.Evid. 602 to D'Lil's statements
28 made without sufficient personal knowledge or foundation.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION, DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION—No. C-05-04708 RMW
JAH      10

**III. ORDER**

For the foregoing reasons, the court

1. rules on the defendants' motion for summary adjudication partially in favor of each side;
2. denies plaintiff's motion for a preliminary injunction; and
3. sets a further case management conference for December 15, 2006 at 10:30 a.m.

DATED:  10/30/06

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Angela Sierra
Nancy A. Beninati          nancy.beninati@doj.ca.gov

**Counsel for Defendants:**

Jason Michael Heath        Jason.Heath@co.santa-cruz.ca.us
Dana McRae

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**      10/30/06                         /s/ JH
                                       **Chambers of Judge Whyte**

United States District Court
For the Northern District of California

ORDER ON DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION, DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION—No. C-05-04708 RMW
JAH                                    12